**SO ORDERED.**

**SIGNED this 20th day of June, 2013.**



Dale L. Somers
United States Bankruptcy Judge

___

For on-line use but not print publication
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In re:** | |
| **SCHUPBACH INVESTMENTS, LLC,** | **CASE NO. 11-11425** |
| | **CHAPTER 11** |
| **DEBTOR.** | |

### MEMORANDUM OPINION AND JUDGMENT
### DENYING DEBTOR'S OBJECTION TO ASSUMPTION AND ASSIGNMENT OF
### LIFE INSURANCE POLICIES

By order filed on November 21, 2012, the Court approved the Creditors' Plan of Liquidation Dated July 24, 2012 (Plan).[1] Generally, the Plan provides for liquidation of the Debtor through transfer of all secured property to the respective secured creditors.[2] The primary collateral is approximately 165 parcels of real property, mortgaged to 12

___

[1] Dkt. 355.

[2] Dkt. 294.

different secured creditors. As additional collateral, "certain of the secured creditors,"[3] hold assignments of insurance policies on the lives of Debtor's principles, Jonathan I. and Amy Schupbach. As to this collateral, the Plan, in Article 6, Executory Contracts and Unexpired Leases, provides in part:

> Further, to the extent the Debtor owns any life insurance to which any creditor holds an assignment or lien, such life insurance will also be assumed and assigned to the creditor as of Confirmation and such assignment will be considered part of ARTICLE 5. The Debtor or the Schupbachs may object to the assumption and assignment of any life insurance policies owned by the Debtor within 21 days of Confirmation. If such an objection is filed, the Court will determine the issue.[4]

Article 5 of the Plan provides as to each creditor holding mortgages on real property, confirmation shall vest the real property in the secured creditor free and clear of all rights of Debtor.

On December 10, 2012, Debtor's Objection to Assumption and Assignment of Life Insurance Policies and Memorandum Brief in Support was timely filed.[5] Debtor re-filed the same document on February 6, 2013.[6] Rose Hill State Bank (Rose Hill) responded to

---

[3] *See* dkt. 374 (Debtor's Objection to Assumption and Assignment of Life Insurance Policies and Memorandum Brief in Support). Only Rose Hill State Bank, the holder of an assignment of life insurance, has objected to Debtor's attempt to invalidate the assignments.

[4] Dkt. 294, as amended by dkt. 355.

[5] Dkt. 374.

[6] Dkt. 414.

both filings.[7]  After a hearing held on March 14, 2013, the matter was placed under advisement.[8]

**FINDINGS OF FACT.**

Rose Hill's amended proof of claim[9] is for approximately $2.7 million, secured primarily by real estate and by other property, including the assignment of a life insurance policy.  By Commercial Security Agreement dated January 25, 2010, Jonathan Schupbach assigned "LIFE INSURANCE POLICY #Z03160011, FROM WEST COAST LIFE INSURANCE COMPANY, DATED 1/25/10, IN THE AMOUNT OF $500,000.00 ON THE LIFE OF JONATHAN I SCHUPBACH" to Rose Hill to secure all sums advanced by the bank to Debtor Schupbach Investments, LLC.  In that assignment document, Jonathan Schupbach agreed to "protect the Property [the pledged rights under the insurance policy] and Secured Party's [Rose Hill Bank's] interest against any competing claim."  He also authorized Rose Hill "to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property."

The liquidating Chapter 11 Plan confirmed by the Court provides that the life insurance policy owned by the Debtor and pledged to Rose Hill shall be assumed by the

---

[7] Dkts. 417 and 436.

[8] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984.  Further, this a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(A) and (L).  There is no objection to venue or jurisdiction over the parties.

[9] Claim 4-2, part 3.

3

Debtor, be assigned to Rose Hill, and become property of Rose Hill free and clear of all rights of the Debtor. Rose Hill anticipates a substantial deficiency after liquidating its collateral other than the life insurance.[10]

**DEBTOR'S OBJECTION AND ROSE HILLS' RESPONSE.**

Debtor objects to this treatment of the life insurance collateral and requests the Court to deny the assumption and assignment of the policies. The sole basis for the objection is the creditors' alleged lack of insurable interest. Debtor relies upon K.S.A. 40-453(a), which provides:

> (a) Determination of the existence and extent of the insurable interest under any life insurance policy shall be made at the time the contract of insurance becomes effective but need not exist at the time the loss occurs. In the case of life insurance policies issued or renewed for a specific term, an insurable interest shall not exist for any policy term with respect to any person previously insured by the policy who has, in writing, requested the insurer to terminate or nonrenew the insurance applicable to such person's life.

K.S.A. 40-453(a) has been construed by the Kansas Supreme Court as establishing the Kansas public policy that "ongoing consent" of the insured is required for a life insurance policy for a stated term to remain in effect.[11]

Rose Hill responds that there is no evidence that either the policy assigned to it comes within the terms of the statute or that the insured has requested termination in writing. Rose Hill also argues that K.S.A. 40-453(a) does not address assumption and

---

[10] See dkt. 436.

[11] *In re Marriage of Hall*, 295 Kan. 776, 782, 286 P.3d 210, 214 (2012).

4

assignment in bankruptcy, but, to the extent it operates as a restriction on assumption and assignment, it is unenforceable under 11 U.S.C. §365(f)(1).

**DISCUSSION.**

Assignments of life insurance policies as collateral for a debt are called conditional assignments, or collateral assignments.[12] "Ordinarily only part of the ownership rights are transferred, and seldom the right to change the beneficiary, and always on condition that upon payment of the debt the rights return (or revert) to the owner-assignor."[13]  In Kansas,  K.S.A. 40-439 preserves the right to assign a life policy by providing "no provision in any . . . law shall be construed as prohibiting a person whose life is insured under a policy of group life . . .  or the policyowner of an individual life . . .  policy from making an assignment of all or any part of his rights and privileges under such policy. . .." "Most assignments of life insurance contracts are made for the purpose of providing additional security in a loan transaction."[14]  "It is uniformly held that a creditor has an insurable interest in the life of his debtor."[15]  "Without the power of assignment life insurance contracts would lose much of their value."[16]

---

[12] 1 William F. Meyer and Franklin L. Best, *Life & Health Insur. Law* § 11:13 (2nd ed.), available on Westlaw at LHINSUR §11:13 (database updated Aug. 2012).

[13] *Id*.

[14] *Id*.

[15] *Butterworth v. Mississippi Valley Trust Co.*, 362 Mo. 133, 139, 240 S.W.2d 676, 680 (Mo.1951).

[16] *Id.*, 362 Mo. at 145, 240 S.W.2d at 684.

5

Jonathan Schupback made a collateral assignment of the policy on his life to secure the debt of Schupbach Investments, LLC to Rose Hill. Through the liquidating Plan, the Debtor's secured creditors receive the collateral securing their loans. As to the life insurance collateral, this is accomplished through Debtor's assumption of the life insurance contracts followed by assignment of the contracts to the secured party. Assumption and assignment of executory contracts are governed by § 365.

Only contracts which remain materially unperformed on both sides as of the date of filing are executory contracts.[17] A life insurance policy is an executory contract where on the date of filing premiums remain to be paid, the policy has not expired by its own terms, and the insured is living.[18]

Debtor asks the Court to deny assumption and assignment of the policy. But Debtor cites no bankruptcy law in support. Debtor does not argue that the life policy on the date of filing was outside the scope of executory contracts which may be assumed under § 365, either because all premiums had not been paid by the owner or the policy had expired on the petition date. Rather, Debtor relies exclusively upon K.S.A. 40-453(a), quoted above. And there is no evidence that the insured prepetition exercised rights under K.S.A. 40-453(a) by requesting in writing the insurer to terminate or not renew the policy. If the insured, Jonathan Schupbach, as Debtor contends, held the right

---

[17] 3 *Collier on Bankruptcy* ¶365.02[2][a] and [e](Alan N. Resnick & Henry J.Sommer eds.-in-chief, 16th ed. rev. 2013).

[18] *LifeUSA, Ins. Co. v. Green (In re Green)*, 241 B.R. 187, 202-03 (Bankr. N.D. Ill. 1999) aff'd 259 B.R. 295 (N.D. Ill 2001) aff'd 42 Fed. Appx. 815 (7th Cir. 2002).

under Kansas law to unilaterally terminate the policy not withstanding the assignment, the Court finds that this unexercised right is insufficient to render the contract nonexecutory. The Court therefore finds that the policy pledged to Rose Hill Bank was an executory contract on the date of filing.

Even though Debtor concedes that the policy was in force on the date of filing, Debtor nevertheless argues that Jonathan Schupbach's rights under K.S.A. 40-453(a) can be exercised postpetition, thereby precluding assumption and assignment. But, assuming Debtor's motion is based upon a valid legal theory, it fails for lack of proof. Debtor has failed to prove that the statute applies to the policy assigned to Rose Hill. The statute governs only policies which are issued or renewed for a specific term, but there is no evidence that the policy satisfied this condition. A copy of the policy has not been provided to the Court, and there is no evidence whether it is for a specific term. Perhaps if the alleged right had been exercised at some time after the petition date, so there no longer is a policy to assume, this would support Debtor's objection. But again, Debtor has failed to provide evidence to support this position. There is no evidence that Jonathon Schupbach has sent written notice to the insurer and that the insurer has terminated the policy. Absent such termination, the policy exists and is subject to assumption and assignment. Such failure of proof makes it unnecessary for the Court to address the 11 U.S.C. § 365(f)(1) issue raised by Rose Hill or state law issues, such as the law of commercial transactions, which might be relevant if Jonathan Schupbach had attempted to terminate the policy.

7

Case 11-11425    Doc# 461    Filed 06/20/13    Page 7 of 8

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.

**JUDGMENT**.

Judgment is hereby entered denying Debtor's Objection to Assumption and Assignment of Life Insurance Policies. The judgment based on this ruling will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**IT IS SO ORDERED.**

###