SO ORDERED.

SIGNED this 3rd day of October, 2013.

*Dale L. Somers*
Dale L. Somers
United States Bankruptcy Judge

_____

**For on-line use but not print publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

SCHUPBACH INVESTMENTS,

                        **DEBTOR.**

**CASE NO. 11-11425**
**CHAPTER 11**

**MEMORANDUM OPINION AND JUDGMENT**
**ALLOWING DEBTOR'S FOURTH, FIFTH, SIXTH, AND SEVENTH**
**APPLICATIONS FOR ALLOWANCE OF ATTORNEY FEES AND EXPENSES,**
**AND GRANTING DEBTOR'S APPLICATION FOR FINAL ALLOWANCE OF**
**FEES AND EXPENSES AS ADMINISTRATIVE EXPENSES**

The matters before the Court are:

(1) the disputed portion (fees of $3,000) of Debtor's Fourth Application for

Allowance of Attorney Fees and Expenses;[1]

_____

[1] Dkt. 344.

1

(2) the disputed portion (fees of $1,180) of Debtor's Fifth Application for Allowance of Attorney Fees and Expenses;[2]

(3) Debtor's Sixth Application for Allowance of Attorney Fees and Expenses[3] requesting allowance of fees of $3,560 (17.8 hours at $200 per hour) and expenses of $95.75 for the time period beginning December 6, 2012, through January 12, 2013, as an administrative expense;

(4) Debtor's Seventh and Final Application for Allowance of Attorney Fees and Expenses[4] requesting allowance of fees of $2,760 (13.8 hours at $200 per hour) and expenses of $119.25 for the time period beginning January 14, 2013, through February 15, 2013, as an administrative expense; and

(5) the Supplemental Seventh and Final Application by Debtor for Allowance of Attorney Fees and Expenses to its Counsel,[5] in which Debtor requests attorney fees and expenses for defending the fourth, fifth, sixth, seventh, and final fee applications, and that all Debtor's allowed attorney fees and expenses be allowed as administrative expenses on a final basis.[6]

---

[2] Dkt. 376.

[3] Dkt. 397.

[4] Dkt. 422.

[5] Dkt. 424.

[6] This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July

Creditor Rose Hill Bank objected to the disputed portion of the fees requested in the fourth application. Rose Hill objected to the disputed portion of the fifth application, and Carl B. Davis, the Liquidating Trustee, also objected in part to the fifth application. Creditors Rose Hill, Bank of Commerce & Trust Co., and Central National Bank objected to the sixth application. Creditors Rose Hill, Bank of Commerce, Central National, and Community Bank of Wichita, Inc., and the Liquidating Trustee objected to the seventh application and its supplement. An evidentiary hearing was held on these applications on March 14, 2013. After due consideration, the Court is now ready to rule, and for the reasons stated below, grants the fees and expenses requested as administrative expenses of the Chapter 11 bankruptcy estate.

## I. History of Fee Applications and Relevant Proceedings in the Chapter 11 Case.

Debtor's counsel, Mark J. Lazzo, began work on this case on March 17, 2011. In April 2011, Debtor paid him a fee retainer of $10,000. On May 12, 2011, five days before filing the Chapter 11 petition, Debtor's counsel prepared his initial billing to Debtor for fees incurred between March 17 and May 11, 2011, of $9,760. Counsel applied $9,760 from the retainer in payment of this bill. Mr. Lazzo was appointed counsel for the debtor-in-possession by an order entered on November 15, 2011.

Prior to the March 14, 2013 hearing on the matters now before the Court, five orders had been entered allowing interim fees and expenses in the amount of $88,358.54

10, 1984. A debtor's motion for allowance of fees and expenses is a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

in this case:

| | | | |
|---|---|---|---|
| November 15, 2011 (Dkt. 234) | 1st app | | $29,019.00 |
| January 17, 2012 (Dkt. 273) | 2nd app | | $25,152.26 |
| August 20, 2012 (Dkt. 307) | 3rd app. | | $11,823.68 |
| November 29, 2012 (Dkt. 362) | 4th app in part | | $11,100.00 |
| January 14, 2013 (Dkt. 399) | 5th app in part | | $11,263.60 |
| | | | $88,358.54 |

The last two orders granted the fourth and fifth applications except for those entries to which there were objections.

The applications for allowance of fees and expenses before the Court at the time of the March 14, 2013 hearing were:

| | | | |
|---|---|---|---|
| Dkt. 344 | $ 3,000.00 | 4th app in part | |
| Dkt. 376 | $ 1,180.00 | 5th app in part | |
| Dkt. 397 | $ 3,655.75 | 6th app | Dec. 6, 2012 to Jan. 12, 2013 |
| Dkt. 422 | $ 2,879.75 | 7th app | Jan. 14, 2012 to Feb. 15, 2013 |
| Dkt. 424 | $ 3,980.00 | supp 7th app | Feb. 16, 2013 to March 11, 2013 |
| | $ 600.00 | supp 7th app | March 14, 2013 hearing |
| | $15,295.50 | | |

The last of these pleadings requests, in addition to an award for fees in defending against the objections to the pending applications, final approval of all the fees and expenses awarded to Debtor's counsel in the case.

Debtor Schupbach Investments, LLC, was engaged in the purchase, renovation, rental, and sale of residential real properties in the low income areas of Wichita, Kansas. Jonathan Schupbach was a 50 percent owner, and was the manager of the company. His wife, Amy Schupbach, owned the other 50 percent and was active in the business. Schupbach Investments filed this case under Chapter 11 on May 16, 2011. Jonathan

4

Schupbach and his wife filed for relief under Chapter 13 on July 16, 2011, but the case was later converted to Chapter 11.[7]  A different attorney and his law firm were retained as counsel for the Schupbachs in their personal case, and Mr. Lazzo continued to represent the limited liability company.

Debtors' Schedule A lists 165 parcels of real property, valued at $4,616,900, mortgaged to 11 different creditors.  Debtor sought to consolidate this case with the Schupbachs' personal bankruptcy, and submitted a proposed Chapter 11 plan premised upon consolidation.  A group of secured creditors filed a competing liquidating Chapter 11 plan.

By an order dated November 21, 2012, the Court confirmed the secured creditors' liquidating plan, which transferred the collateral securing their claims to the respective creditors and all other assets to a liquidating trust.  The plan provides that all allowed administrative expenses of the case shall paid by the trust, with the secured creditors making contributions to pay such claims if, as anticipated, the assets of the trust are insufficient to satisfy all administrative claims.  Carl B. Davis was appointed as the trustee of the liquidating trust.

## II.  Applicable Standard for Allowance of Fees and Expenses.

The award of professional fees to attorneys for a debtor in a bankruptcy case is governed by § 330.  Under § 330(a)(1), "bankruptcy courts have wide discretion in

---

[7] Case no. 11-13633.

5

awarding compensation to attorneys, trustees, and professionals so long as it is

reasonable."[8]  The Tenth Circuit has described the § 330 statutory standard as follows:

> The statute . . . provides, that "[i]n determining the amount of
> reasonable compensation to be awarded, the court shall
> consider the nature, the extent, and the value of such
> services. . . ."  In order to do this, the court must take
> into account all relevant factors, including —
> (**A**) the time spent on such services; (**B**) the
> rates charged for such services; (**C**) whether the
> services were necessary to the administration of,
> or beneficial at the time at which the service
> was rendered toward the completion of, a case
> under this title; (**D**) whether the services were
> performed within a reasonable amount of time
> commensurate with the complexity, importance,
> and nature of the problem, issue, or task
> addressed; and (**E**) whether the compensation is
> reasonable based on the customary
> compensation charged by comparably skilled
> practitioners in cases other than cases under this
> title.[9]

Section 330(a)(4) further provides that, except in circumstances not applicable here,

compensation shall not be allowed for "(i) unnecessary duplication of services; or (ii)

---

[8] *In re Commercial Financial Services, Inc.*, 427 F.3d 804, 810 (10th Cir. 2005) (*citing Connolly v. Harris Trust Co. (In re Miniscribe Corp.)*, 309 F.3d 1234, 1244 (10th Cir. 2002)).

[9] *Id.* (*quoting* 11 U.S.C. § 330(a)(3)).  About the time the Tenth Circuit issued its decision, a new amendment to § 330(a)(3) took effect, which redesignated subsection (E) as subsection (F) and added a new subsection (E), directing a court reviewing a professional person's fee application to consider "whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field."  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23, § 415 (effective Oct. 17, 2005).  The Court's decision in this case takes this amendment into account.  After this opinion had been drafted but not yet finalized, the Tenth Circuit issued a decision concerning an award of attorney fees in a bankruptcy case, *In re Market Center East Retail Property, Inc.*, ___ F.3d ___, 2013 WL 5273135 (Sept. 19, 2013), which the Court has reviewed.  The Court concludes it does not require any change in the analysis of this case.

6

services that were not — (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case."

The Court has carefully reviewed each of the billing statements filed in support of each request for allowance. In general, and without prejudging the objections addressed below, the Court finds the requests to be appropriate and the fees to be reasonable. The billing statements are well constructed and have appropriate detail. Mr. Lazzo is an experienced bankruptcy practitioner, and his hourly rate is reasonable. The time spent on each item was commensurate with the complexity, the importance, and the nature of the matters addressed. There is no duplication of services. The total amount of time devoted to the case is reasonable.

## III. Objections that Fees and Expenses for Certain Services Should Be Disallowed as a Matter of Law Are Rejected.

In addition to complaining about specific time entries, the objecting creditors assert that the attorney time for certain services requested in more than one application should not be allowed as a matter of law. The Court will discuss these objections before turning to the fact-specific objections to particular time entries.

### A. The confirmation of the Creditors' Plan of Liquidation dated July 24, 2012, does not bar the allowance of attorney fees and expenses incurred by Debtor for post-confirmation services.

After the March 14, 2013 hearing, following which the issue of allowance of fees was taken under advisement, Rose Hill filed a supplemental objection to the allowance of

7

fees to Debtor's attorney.[10] It argues that as a matter of law, an award of fees and

expenses as an administrative claim is barred for all services after November 21, 2012,

the date of confirmation of the creditors' liquidating plan. Most of the entries in the fifth

application and all of the entries in the sixth and seventh applications, as well as the fees

for defending the fee applications, were for post-confirmation services.

Rose Hill relies upon *Lamie*,[11] where the United States Supreme Court held that

§ 330(a) does not allow a Chapter 7 debtor's attorney to be compensated from the

Chapter 7 estate unless employment of the attorney by the trustee is approved by the court

under § 327. In *Lamie*, the case was initially filed under Chapter 11, the employment of

counsel for the debtor-in-possession under § 327 was approved by the court, and fees

were allowed under § 330 for services provided while the debtor was the debtor-in-

possession. However, counsel for the debtor-in-possession continued to provide services

after the conversion to Chapter 7 and sought allowance of such fees from the Chapter 7

estate. The Supreme Court held that the Bankruptcy Code does not allow a Chapter 7

debtor's counsel to be compensated from the estate for legal fees incurred during the

Chapter 11 phase of the case and after conversion. The Court reasoned that the granting

of the motion to convert the Chapter 11 case to a proceeding under Chapter 7 terminated

the debtor's "status as a debtor-in-possession and so terminated [counsel's] services under

---

[10] Dkt. 451.

[11] *Lamie v. United States Trustee*, 540 U.S. 526 (2004).

8

§ 327 as an attorney for the debtor-in-possession."[12]  It construed the Code to provide that a debtor's attorney not engaged as provided by § 327 is not included within the class of persons eligible for compensation under § 330(a)(1).

Rose Hill argues that in this case, the confirmation of the liquidating plan terminated Debtor's status as a debtor-in-possession and terminated the attorney's services as attorney for the debtor-in-possession, so that as a matter of law, fees for the post-confirmation period are not entitled to treatment as an administrative expense, or even an unsecured claim.  Although this argument is superficially appealing, closer scrutiny shows that it should be rejected.

In this case, confirmation of the creditors' liquidating plan of reorganization did not terminate Debtor's status as a debtor-in-possession.  Section 1101 defines "debtor in possession" to mean the "debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case."  For purposes of a Chapter 11 case, § 322 addresses the qualification of a person selected under § 1104 for appointment as trustee to take over the duties of the debtor-in-possession.  The confirmed liquidating plan did not appoint a trustee under § 1104.

The transfer of all or any part of the property of the estate to a liquidating trust is authorized by § 1123(a)(5)(B) as a means of implementing a plan.  Such a trust is an extra-bankruptcy entity, and the duties and powers of the trustee of the liquidating trust

---

[12] *Id.*, at 532.

9

are defined by the trust, not the Code.  The trustee of the liquidating trust is not a

replacement for a Chapter 11 trustee.  "'Under the Code, the debtor remains the debtor in

possession unless and until a trustee is appointed by court order under Section 1104.'"[13]

When the liquidating plan was confirmed and the liquidating trust created, Debtor as the

debtor-in-possession was not relieved of the duties specified in § 1106 that are made

applicable to debtors-in-possession by § 1107(a).

The liquidating trust did not convert this case to one under Chapter 7.  The

requests for allowance of fees and expenses seek payment as administrative expenses of

the Chapter 11 case.  The liquidating plan provides that all allowed administrative

expenses will be paid by the trust, with the secured parties providing funds if, as

anticipated, the trust assets are insufficient.

Further, as stated in § 1141(a), the effect of confirmation in general is to bind the

parties to the terms of the plan.  Debtor *and* the liquidating trust, an entity organized for

carrying out the plan, are both obligated by § 1142(a) to "carry out the plan and . . . [to]

comply with any orders of the court."  Section 330(a)(3)(C) provides that in determining

the amount of reasonable compensation for professional persons appointed under § 327,

the court should consider "whether the services were necessary to the administration of,

or beneficial at the time at which the service was rendered toward the completion of, a

case under this title."  Assuming but not deciding that the confirmation of the liquidating

---

[13] *In re Bresnick*, 406 B.R. 582, 585 (Bankr. E.D.N.Y. 2009) (*quoting In re Footstar, Inc.*, 323 B.R. 566, 571 (Bankr. S.D.N.Y. 2005)).

10

plan terminated Debtor's ability as the debtor-in-possession to take actions beneficial to the estate, the Code nevertheless allows for compensation for the post-confirmation services of counsel appointed under § 327 that are necessary for the administration of the estate.

The Court finds that fees and expenses may be awarded to Debtor's counsel for the time period following confirmation of the liquidating plan.

### B. Fees and expenses may be awarded for services in defending the objections to the requests for allowance.

When opposing the sixth and seventh applications,[14] Rose Hill argues that services in defense of objections to an allowance of fees and expenses are noncompensable. It is true that "the issue of compensation for time spent defending against an objection to a fee application . . . is left open by section 330(a)(6)," which was added to the Code in 1994 and provides for compensation for preparation of fee applications.[15] Courts therefore decide the issue of compensation for defense of fee applications by reference to the general standards for the allowance of compensation as stated in § 330(a). But application of these standards has not produced uniform results,[16] and there appears to be no decision from the Tenth Circuit Court of Appeals on the question. Fees have been

---

[14] Dkt. 408 at 2; dkt. 433 at 1-2.

[15] 3 *Collier on Bankruptcy*, ¶ 330.03[16][a][ii] (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2013); *id.*, ¶ 330.LH[5] at 330-72 to 330-73 (stating § 330(a)(6) was added by Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 224 (1994)).

[16] *Id.*, ¶ 330.03[16][a][ii].

11

denied on the basis that the estate was not benefitted by such a defense, and reliance on the American Rule for attorney fees, under which parties must generally bear their own litigation costs absent specific fee-shifting legislation.[17]  Those courts allowing compensation have found "that to do otherwise would dilute the fee award in violation of §330(a), thus impermissibly reducing the effective compensation of bankruptcy attorneys to levels below that of attorneys generally."[18]

The Court finds persuasive three recent decisions finding such services compensable.  The first is *Engman*,[19] a district court opinion reversing a bankruptcy court's denial of fees for defending an application because the court was "'not satisfied that there is sufficient authority under Section 330(a) to warrant such fees.'"[20]  The district court stated:

> The bankruptcy court erred in its construction of 11 U.S.C. § 330(a). . . . To hold [that such fees must be disallowed as a matter of law] would allow a litigious objecting party to negotiate unwarranted reductions in a fee award simply because the attorney is faced with a no win situation:  even if the attorney fights the objections and prevails, the time and resources spent on the issue often will outweigh the value of the amount in dispute. . . . Such a scenario would undoubtedly compromise a bankruptcy attorney's ability to represent the estate, and might also deter competent attorneys from specializing in bankruptcy law. . . .

---

[17] *In re Millennium Multiple Employer Welfare Benefit Plan*, 470 B.R. 203, 217 (Bankr. W.D. Okl. 2012).

[18] *Id*.

[19] *Boyd v. Engman*, 404 B.R. 467 (W.D. Mich. 2009).

[20] *Id*. at 482 (*quoting In re Engman*, 389 B.R. 36, 48 (Bankr. W.D. Mich. 2008)).

This is precisely the problem that Section 330(a) was designed to combat. . . . Preparing and defending attorney fee applications is part and parcel with the attorney's role in the administration of the bankruptcy process and is therefore compensable under 11 U.S.C. § 330(a).[21]

In *Millennium*, a bankruptcy court in Oklahoma found "compelling the rationale of the *Engman* case that allowing fees for defense of a fee application is consistent with the overall purpose of § 330 of the Bankruptcy Code, and provides a benefit to the bankruptcy estate and to the bankruptcy system."[22]  In *Lupo*, a bankruptcy court in Massachusetts found the reasoning of *Millennium* and *Engman* persuasive.[23]  It reasoned that where the objection to the requested fees lacked merit but contained damaging allegations, a refusal to allow fees for defending against the objection would reward the objecting party for proffering an unmeritorious objection, while penalizing counsel by, in effect, reducing the fees awarded with respect to the application.[24]

In this case, the Court finds that to disallow fees for defense of the fee applications against objections as a matter of law would not be consistent with § 330(a).  It would reduce the effective compensation of Debtor's counsel and unjustly reward the objecting creditors.  Defense against objections to fee allowances is a part of the administration of the case.  In this case, the objecting creditors have a direct pecuniary interest in reducing

---

[21] *Id*. at 483.

[22] *Millennium Multiple Employer Welfare Benefit Plan*, 470 B.R. at 217.

[23] *In re Lupo*, 2012 WL 1682571, *3 (Bankr. D. Mass. 2012).

[24] *Id*.

13

the fee award and fully availed themselves of the opportunity to accomplish that end. Based upon its familiarity with the case and parties involved, the Court also finds that personal animosity has contributed to the escalation of the controversies before the Court. The Code's provisions for retaining and compensating professional persons should be applied in a manner that promotes retention and adequate compensation for debtor's counsel.

## IV. The Objection to Debtor's Fourth Application for Fees and Expenses Is Overruled.

Debtor's Fourth Application for Allowance of Attorney Fees and Expenses[25] requests allowance of fees of $14,100 (70.5 hours at $200 per hour) for the time period beginning June 7, 2012, through October 24, 2012, as an administrative expense. Rose Hill objected to specific entries totaling $3,000. By an order entered on November 29, 2012,[26] the Court allowed the fourth request, except for the $3,000.

All of the time entries to which Rose Hill objects involve counsel's evaluation of and attempt to settle an objection to the dischargeability of a claim filed by Bank of Commerce in the bankruptcy of Jonathan and Amy Schupbach, the owners and managers of Debtor. At the time of the challenged entries, there were two competing proposed Chapter 11 plans before the Court, one proposed by Debtor and one proposed by creditors. Counsel for Debtor was attempting a global settlement of the competing plans,

---

[25] Dkt. 344.

[26] Dkt. 362.

14

and evaluation of the dischargeability complaint was required for meaningful settlement discussions. The time spent on the dischargeability complaint benefitted the estate. The fees are therefore properly allowed as an administrative expense.

The $3,000 requested in the fourth application and not previously approved is hereby approved.

## V. The Objections to Debtor's Fifth Application for Fees and Expenses Are Overruled.

Debtor's Fifth Application for Allowance of Attorney fees and Expenses[27] requests allowance of fees of $12,030 (60.15 hours at $200 per hour) for the time period beginning September 20, 2012, through December 6, 2012, as an administrative expense.[28] Rose Hill and the Liquidating Trustee objected to time entries totaling $1,180. By an order entered on January 14, 2013,[29] the Court allowed the request except for the $1,180.

Rose Hill objects to an award of fees for .3 hours on October 26, 2012, for review of an e-mail from counsel for Bank of Commerce "regarding rejection of global settlement term to resolve competing Chapter 11 Plans by dismissal of adversary" and forwarding the same to the client. In Rose Hill's view, since the time entry concerns the dischargeability complaint filed in the Schupbachs' personal bankruptcy, compensation

---

[27] Dkt. 376.

[28] The time period covered by this fifth application overlaps the time period covered by the fourth application for one month, September 20, 2012, through October 24, 2012, but the only entries in the fifth application for this month are for expenses which were not requested in the fourth application. There is no duplication of requests for attorney fees.

[29] Dkt. 399.

15

should not be paid by the Schupbach Investments' estate. The Court rejects this objection. The correspondence concerned a settlement of disputes regarding Debtor's Chapter 11 plan, which is by any standard compensable time. The fact that the potential settlement included the dischargeability complaint filed in the Schupbachs' personal bankruptcy case does not negate the fact that the entry concerned the administration of this case.

Rose Hill also objects to an entry for .3 hours on October 29, 2012, for "e-mail exchange with client regarding cancellation of credit life insurance policies, modification of creditor plan relative to same, whether Banks have insurable interest, recommended action." Both Rose Hill and the Liquidating Trustee object to time entries for 3.7 hours on December 5, 2012, and 1.6 hours on December 6, 2012, regarding the life insurance issue, contending that the time spent was for the benefit of Jonathan Schupbach, not Debtor's Chapter 11 estate. These time entries concern Debtor's objection to a term in the creditors' liquidating plan that provided for the assumption and assignment to the creditors of insurance policies owned by Debtor that insured the life of Jonathan Schupbach, which policies had been assigned prepetition to the bank creditors as collateral. When Debtor otherwise agreed to the creditors' plan, this objection was preserved by a provision in the order confirming the plan which states that "[t]he Debtor or the Schupbachs may object to the assumption and assignment of any life insurance policies owed by the Debtor within 21 days of Confirmation. If such an objection is filed,

16

the Court will determine the issue."[30]

Debtor filed the objection, contending that assignment and assumption was improper because under Kansas law the creditors lacked an insurable interest in the life of Jonathan Schupbach who, as the insured, had the right to cancel the policies. Rose Hill opposed the objection. By a memorandum opinion and judgment entered on June 20, 2013,[31] the Court resolved the matter by finding that although Debtor was correct about Kansas law, there was no evidence that the insured had exercised his right to cancel the policies, which therefore remained available for assignment and assumption. Counsel for Rose Hill, however, has subsequently made it clear that the bank will not oppose the insured's actions to cancel the policies and agrees that upon such cancellation, any assignment or assumption will be null and void.

The Court rejects the objections to time spent on the life insurance issue. The Code in § 330(a)(3)(C) directs the Court when reviewing compensation of attorneys to consider if the services were necessary to the administration of or beneficial to the case. The services rendered by Debtor's counsel relating to the assignment of the insurance policies were necessary to resolve the only objection to the liquidating plan which was not decided by agreement between Debtor and its creditors. It concerned the disposition of property of the estate. The creditors' objections to the time entries are based upon Debtor's presumed motivation. That is not the question. The Court is directed to approve

_____

[30] Dkt. 355 at 3, amendments to Article 6 of the plan.

[31] Dkt. 460.

17

the fees unless they were not necessary to the administration of the case.  The Court finds that resolution of Debtor's objection to a term of the plan was necessary before the plan could be confirmed, and so was necessary to the administration of this case.

The Court therefore rejects the objections to Debtor's request for an award of $1,060 (5.3 hours at $200 per hour) for time devoted to the assignment of insurance issue.[32]

## VI.  The Objections to Debtor's Sixth Application for Allowance of Attorney fees and Expenses Are Overruled.

In the sixth application, Debtor requests allowance of fees of $3,560 (17.8 hours at $200 per hour) for the time period beginning December 6, 2012, through January 12, 2013, as an administrative expense.  Rose Hill objects to the entire request on procedural grounds, and to specific time entries as unnecessary and providing no benefit to the estate. Bank of Commerce adopts Rose Hill's objections and also contends that "only fees directly related to surrender of assets to creditors, or work expressly requested by the Liquidating Trustee, should be subject to allowance as an administrative expense of the Liquidating Trust."[33]  Central National Bank's objection incorporates the objections of Rose Hill and Bank of Commerce.

Rose Hill's initial objections are procedural.  The first is that the sixth application was filed on January 14, 2013, approximately one month after the filing of the fifth

---

[32] The total spent on the assignment of insurance issue for which compensation is requested is 6.3 hours, 5.3 in the fifth application and 1 in the seventh application.  This is not excessive.

[33] Dkt. 409.

application, in violation of § 331, which provides that a debtor's attorney may apply for fees not more than once every 120 days after an order for relief, unless the court authorizes more frequent applications.[34]  The Court finds that the violation of the limitations on the timing of applications is harmless.  If the sixth application had not been filed, the time periods it covers would have been included in the seventh, and final, application, which is also now before the Court.

In a supplemental objection,[35] Rose Hill complains because the sixth application "fails to disclose the 'amounts of all previous payments and amount of any allowed fees and expenses remaining unpaid,' as set out in the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 USC § 330."[36]  Any failure to comply with the guidelines is harmless, as all the information required was included in subsequent applications and is now before the Court.

As to the substantive objections to specific time entries, the objecting creditors first contend that all of the time for which compensation is sought was spent after confirmation, and most of the entries relate to inquiries from creditors and the Liquidating Trustee concerning minor issues that could have been responded to directly by the

---

[34] On February 15, 2013, one day after the filing of Rose Hill's objection and approximately one month after the filing of the sixth application, Debtor filed a motion under § 331 to allow monthly fee applications.  Dkt. 420.  This motion and the objections thereto will be addressed by a separate order.

[35] Dkt. 411.

[36] *Id.*

19

Schupbachs.  The Court rejects this objection.  As explained above in section (III)(A), the Court rejects the argument that as a matter of law, all time spent by Debtor's counsel after confirmation of the liquidating plan is noncompensable.  Inquiries to which counsel responded were made to Debtor's counsel, not to the Schupbachs.  The creditors and the Liquidating Trustee requested assistance in implementing the liquidating plan and received it.  It is disingenuous for them to now argue that the time spent responding is noncompensable.  Further, Jonathan Schupbach testified that he desired that counsel act as a "middle man" with respect to obtaining information from him about Schupbach Investments, since his experience in the case has resulted in his not trusting the creditors or their counsel.  Under § 330(a)(3)(C), compensation should be disallowed for services that were not "necessary to the administration of . . . [the] case."  The challenged entries were necessary to the administration of the case, and compensation shall be allowed.

Rose Hill objects to less than one hour of time for drafting a proof of an administrative claim for postpetition federal taxes, on the premise that since Debtor is an LLC, it has no tax liability.  Testimony established that the time relates to employment taxes owed by the estate and the provision of 1099 forms to those paid by Schupbach Investments during the year.  This is a matter concerning the administration of the case. The objection is overruled.

The entries for December 13, 18, and 20, 2012, are objected to on the basis that the matters to which they relate did not benefit the estate.  But they did relate to the implementation of the liquidating plan and the administration of the case.  The times for

20

December 13 and 18 concerned the Van der Bloemen matters, which are addressed in the liquidating plan and therefore concerned administration of the case.  The entry for December 20 is for an e-mail exchange with the Liquidating Trustee regarding the life insurance issue.  For the reasons stated above in section (V), the Court finds time spent on this issue is compensable.  The objections are overruled.

Finally, Rose Hill objects to the majority of the time entries starting on December 27, 2012, and continuing to January 12, 2013.  This time was devoted to defending the fee requests and status hearings on the same, and according to Rose Hill, is noncompensable as a matter of law.  This objection is overruled for the reasons discussed above in section (III)(A).

## VII.  Debtor's Seventh and Final Application Is Granted.

### A.  Request for award of fees and expenses.

Debtor's seventh application seeks an award of fees of $2,760 and expenses of $119.25 incurred for the period beginning January 14, 2013, through February 15, 2013.[37]  This request was supplemented by a request for allowance of fees for time spent after February 15, 2013, through the date of the hearing on March 14, 2013.[38]  At the hearing, Mr. Lazzo presented evidence that the amounts were $3,980 for services prior to the hearing,[39] plus $600 for his appearance on March 14, 2013.

---

[37] Dkt. 422.

[38] Dkt. 424.

[39] Dkt. 439-4.

21

Rose Hill objects to specific time entries for the preparation of a 2012 tax return, services relating to the fee applications, time spent on the life insurance issue, and representation concerning an alleged housing code violation.[40] Central National,[41] Bank of Commerce,[42] and Community Bank[43] joined in Rose Hill's objection to these specific time entries.

The Court rejects the objection to the award of fees of $460 (2.3 hours reported in nine separate entries) for services regarding the 2012 tax matters and post-confirmation reports. The entries reflect services to respond to correspondence from the United States Trustee's Office and the Liquidating Trustee as to who was responsible for preparing tax returns and to ask Debtor's management to provide necessary information for the returns. The objection states no reason why these services are noncompensable, and the Court knows of none.

The second objection is to time entries (4.9 hours between January 14, 2013, and February 15, 2013, 19.9 hours between February 18, 2013, and March 10, 2013, and 3 hours for the March 14, 2013, hearing) for services in opposing the objections to the fee requests, including the preparation of a trial brief (which the Court has found helpful) and appearance at the evidentiary hearing. As found above in section (III)(B), the Court has

---

[40] Dkt. 433.

[41] Dkt. 441.

[42] Dkt. 443.

[43] Dkt. 444.

concluded that services for defending against the objections to the fee applications are compensable. The Court does not find the time to be excessive.

The third group of challenged time entries is a total of one hour spread over three days that was devoted to the life insurance assignment issue. For the reasons stated above in section (V), the Court finds this time is compensable.

The final objection to specific entries is to 3.5 hours allegedly devoted to "housing code issues which involved warrants against Mr. Schupbach personally."[44] But review of the challenged time entries show that Debtor's estate was involved. The first entry states in part, "Teleconference with client regarding Wichita Police Officer Elding contact relative to warrants issued by city for code violations on properties previously quit claimed to creditors." Most of counsel's subsequent time entries regarding the code violations relate to the filing of quit claim deeds by the creditors to which the properties were transferred. These alleged housing code violations prompted the filing of Debtor's Motion to Compel Compliance by Petitioning Creditors with Confirmation Order, praying for an order requiring the creditors to record quit claim deeds given to them by Debtor and to contact the appropriate Wichita authorities to inform them about the ownership of the properties involved in the alleged code violations.[45] The Court finds that the time was related to the administration of the case and is compensable.

**B. Request for final allowance of fees and expenses.**

---

[44] Dkt. 433 at 2.

[45] Dkt. 412.

The second aspect of the seventh request for allowance is for final approval of the fees previously approved on an interim basis and a final order allowing fees in the total amount of $103,654.04 as an administrative expense. This request drew a whole new set of objections, discussed below.

**1. The Court will not reconsider its nunc pro tunc appointment of Mr. Lazzo.**

When opposing the application for final award of fees, Rose Hill's first objection is to the nunc pro tunc appointment of Mr. Lazzo as counsel for Debtor. This case was filed on May 16, 2011. The application for Mr. Lazzo's employment was filed on June 17, 2011, and for the reasons stated on the record, was granted nunc pro tunc. The Court declines to reconsider its prior order.

**2. Compensation will not be denied or reduced because of alleged failures to disclose the details of payments from the prepetition retainer and the source of interim payments Debtor made, as permitted by orders of the Court.**

When opposing the final application, Rose Hill devotes several pages of its pleading to complaints regarding alleged deficiencies in the disclosure and itemization of prepetition services, the lack of a contemporaneous disclosure of details regarding the application of the prepetition retainer, and speculation as to the source of postpetition payments of fees approved on an interim basis. The Court finds these objections are insufficient to deny or reduce the final award of fees.

First, the Court questions whether these deficiencies, even if accurate and not corrected, would provide a basis to deny or reduce a final award of fees. The objecting

24

creditors provide no authorities in this regard. The alleged irregularities are insignificant and have had no material effect on the case. The entire process of the allowance of fees has been very transparent, and the alleged deficiencies do not cause the Court to have any concerns about the integrity of the process. Second, the objecting creditors, although involved in the fees-allowance process throughout this case, never objected contemporaneously to these alleged deficiencies regarding the retainer, thereby requiring them to set out very good reasons for their change of position. They have not done so. As to the source of payment of allowed interim fees, the orders approving the fees also authorized immediate payment. If the objecting creditors were concerned about the source of payment, they should have brought the issue to the attention of the Court, but they did not do so. Further, any possible disclosure deficiencies appear to have been cured, as counsel for Debtor has provided a full itemization of his prepetition services, and a full disclosure of all prepetition payments and his application of the retainer.

### 3. The Court's prior order approving Debtor's employment of counsel will not be set aside based upon an allegation of lack of disinterestedness.

When objecting to the final award, Rose Hill argues that "the pre-petition payments of the $9,760.00 and the pre-petition fees due of $5,200.00 might well render debtor's counsel <u>not</u> 'disinterested' and therefore not eligible to be employed at all."[46] The Court disagrees.

---

[46] Dkt. 433 at 3-4.

When this case was filed on May 16, 2011, Mr. Lazzo, who was later appointed as counsel for the debtor-in-possession, disclosed that he had agreed with Debtor to provide legal services at the rate of $200 per hour and that Debtor had paid him a $10,000 retainer.  When the debtor-in-possession applied for approval of the employment,  Mr. Lazzo filed the attorney's affidavit required by District of Kansas Local Bankruptcy Rule 2014.1, stating under oath that he was disinterested and did not hold or represent an interest adverse to the estate.  In his first interim fee application, Mr. Lazzo requested compensation from the estate for $5,200 in fees incurred in the four days just prior to the filing of the case.[47]  There was no objection to the award of fees for this period and no assertion that Mr. Lazzo was not disinterested.[48]  The request was approved.

Now, when objecting to the seventh and final applications, Rose Hill and those other creditors joining in Rose Hill's objection contend that because of the outstanding obligation for $5,200 in fees due Mr. Lazzo on the date of filing, he was not disinterested and therefore his request for allowance of all fees for his representation in the case should be denied.

The court rejects this argument.  Section 328(c) allows the court to deny compensation for the services of an attorney employed under § 327 "if, at any time during such professional person's employment under section 327 . . . , such professional person

---

[47] Other pre-filing fees had been paid from the retainer.  Dkt. 422 at 2.

[48] Rose Hill and Central National objected to the request that the employment be allowed nunc pro tunc, but not to the specific time entries.

26

is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." Section 101(14) defines "disinterested person" to include a requirement that the person not be a creditor, an equity security holder, or an insider. But § 1107(b) provides that notwithstanding § 327(a), "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."

The question is whether an attorney who on the date of filing is owed $5,200 in fees for work performed to prepare for the filing of a Chapter 11 case within the week prior to filing is disqualified because he is not disinterested or whether § 1107(b) applies. *Collier on Bankruptcy* reports that although "[a] majority of courts have concluded that a professional who is a creditor may not be retained,"[49] "[a] minority of courts have taken a more flexible approach and have attempted to balance potential risks associated with employing a professional who is not disinterested with the costs of retaining a substitute professional who is disinterested."[50] However, *Collier on Bankruptcy* also notes that "[e]ven courts that adhere to the *per se* rule have held that professionals holding claims for services rendered prior to the commencement of the chapter 11 case are not thereby barred from representing the debtor in possession if the services were rendered in

---

[49] 7 *Collier on Bankruptcy* ¶ 1107.04[3][b] at 1107-14

[50] *Id*. at ¶ 1107.04[3][c] at 1107-17.

preparation for the bankruptcy filing."[51]  The First Circuit has stated, "The performance

of standard prepetition services, *i.e.,* preliminary work routinely undertaken to facilitate

an upcoming chapter 11 filing, will not serve to disqualify an otherwise eligible

attorney."[52]  The court reasoned as follows:

> At first blush, [§ 327(a)] . . . would seem to foreclose the
> employment of an attorney who is in any respect a "creditor."
> But, such a literalistic reading defies common sense and must
> be discarded as grossly overbroad.  After all, any attorney
> who may be retained or appointed to render professional
> services to a debtor in possession becomes a creditor of the
> estate just as soon as any compensable time is spent on
> account.  Thus, to interpret the law in such an inelastic way
> would virtually eliminate any possibility of legal assistance
> for a debtor in possession, except under a cash-and-carry
> arrangement or on a *pro bono* basis.  It stands to reason that
> the statutory mosaic must, at the least, be read to exclude as a
> "creditor" a lawyer, not previously owed back fees or other
> indebtedness, who is authorized by the court to represent a
> debtor in connection with reorganization proceedings —
> notwithstanding that the lawyer will almost instantaneously
> become a creditor of the estate with regard to the charges
> endemic to current and future representation.[53]

This Court agrees with the First Circuit.  To disqualify Mr. Lazzo because he was

owed $5,200 on the date of filing for services provided immediately prepetition to prepare

for Debtor's bankruptcy filing would defy common sense.  The Tenth Circuit appears not

have taken a position on the question, but the Court is confident that it would not find the

---

[51] *Id.* at ¶ 1107,04[3]b] at 1107-16.

[52] *In re Martin*, 817 F.2d 175, 180 n.5 (1st Cir. 1987).

[53] *Id*. at 180.

existence of Mr. Lazzo's claim sufficient to preclude appointment or deny allowance of fees. The possibility that the claim would affect his representation of Debtor is nonexistent. The amount owed is a very small portion of the total claims in this case, and even a small percentage of the total cost for services Mr. Lazzo rendered to the debtor-in-possession.

> **4. The Court will not the deny the final application based upon the argument that some services billed are not proper administrative expenses of the case because they were not beneficial to the estate.**

The objecting creditors argue that compensation should be excluded for services which did not benefit the estate. Under this category, they take aim at services related to Debtor's failed motion to consolidate this case with the Schupbachs' personal case,[54] and Debtor's proposed, but rejected, plan of reorganization. They argue that it was evident early in the case that Debtor could not propose a confirmable plan.

This objection requests the Court to examine the strategic decisions of Debtor's counsel during the case. Such an examination must be performed from the perspective of whether the services were calculated to benefit the estate when they were performed, not whether through the lens of hindsight, they resulted in a benefit to the estate.[55] Further, substantial deference must be given to the decisions of counsel, as this Court, like others,

---

[54] They assert that Debtor's counsel billed for 40.3 hours for this service between September 20, 2011, and January 19, 2012. Dkt. 433 at 6.

[55] *See Hansen, Jones & Leta, P.C., v. Segal*, 220 B.R. 434, 445 (D. Utah 1998) ("[T]he bankruptcy court must assess whether the professional's services benefit[t]ed or were reasonably calculated to benefit the estate before addressing the question of reasonableness.")

is "reluctant to second-guess an attorney's choice about how best to represent the client's interests."[56]

In this case, Debtor is a Kansas limited liability company, owned and managed by two individuals, Jonathan Schupbach and his wife. No other persons have ever been involved in the management or ownership of the company. The Schupbachs have personal liability for a substantial amount of the LLC's debts, and their individual Chapter 11 case is also pending before this Court. The absolute priority rule presented an obstacle to the Schupbachs' continued ability to manage Debtor postpetition. Consolidation of the Schupbachs' business and personal bankruptcy estates was a reasonable strategy for achieving rehabilitation of Debtor, and the time spent on that issue was calculated to benefit the estate.

Debtor proposed a plan of reorganization which was not confirmed. The secured creditors now assert that time spent seeking reorganization should be disallowed because it was for the purpose of benefitting the Schupbachs, not Debtor. If the Court were to examine the motivation for Debtor's strategic decisions, it would feel compelled to consider the motivation for the creditors' strategic failure to pursue a motion to dismiss at an appropriate time during the pendency of this case. The Court will not do so. Proposing a reorganization plan is a fundamental duty of a Chapter 11 debtor's counsel. Many of the Chapter 11 cases in this district are filed by closely-held businesses where

---

[56] *In re A.W. Logging, Inc.*, 356 B.R. 506, 516 (D. Idaho 2006).

the affairs of the owners and the company are intertwined and successful reorganization is doubtful. Nevertheless, the Chapter 11 process is available to such debtors. In such cases, the possibility that the debtor's counsel would not receive compensation if a proposed plan is not confirmed would adversely impact representation of such debtors and harm the bankruptcy process.

## CONCLUSION.

For the forgoing reasons, the Court allows the disputed portions of the fourth and fifth applications, and the fees and expenses requested in the sixth, seventh, and supplemental seventh applications. The Court also allows all fees and expenses, both those previously awarded on an interim basis and the fees and expenses allowed by virtue of this order, on a final basis as administrative expenses of the estate. The total allowed is $103,654.04. Debtor's counsel has received postpetition payments from Debtor of $65,702.18,[57] leaving a balance owed of $37,951.86.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure, which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.

## JUDGMENT.

Judgment is hereby entered allowing Debtor's counsel, Mark J. Lazzo, an administrative claim for fees and expenses in the amount of $103,654.04. The judgment

---

[57] Dkt. 422 at 2.

31

based on this ruling will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**IT IS SO ORDERED.**

# # #